Mr. Rowland. May it please the Court. My name is Dave Rowland and I am representing Miss Janice Duffner, the appellant. Your Honors, the Supreme Court recently affirmed that it is an enduring part of the judicial duty to exercise reasoned judgment in identifying interests of the person so fundamental that the state must accord them its respect. The U.S. Supreme Court, relying on this principle, has identified many fundamental rights protected under the 14th Amendment under principles of substantive due process that are not necessarily expressly articulated in the Bill of Rights. These include the right to marry, the right to marital privacy, the right to have children, the right to establish a home and to raise children in that home, the right to make decisions concerning the upbringing of your children, the right to bodily integrity, the right to satisfy intellectual and emotional needs in the privacy of one home, one's home. These are all fundamental rights that the U.S. Supreme Court has recognized are protected by principles of substantive due process. The analysis that the U.S. Supreme Court has prescribed where a plaintiff brings forward a fundamental right for consideration is the court is supposed to look and consider whether the asserted right is deeply rooted in the nation's history and tradition. It's also supposed to evaluate whether the right is implicit in the concept of ordered liberty. Ms. Stuffner has presented not one but two separate fundamental rights that are deeply enmeshed in our nation's legal history, dating back even before the Republic to the Anglo-American or rather the Anglo legal tradition that preceded the establishment of the Blackstone and Lord Cook and John Locke. And in discussing the idea of property, which they treated as one of the fundamental rights of Englishmen, they talked about the right of property including the free use, enjoyment, and disposal of acquisitions. Even once we formed the Republic and courts started assessing the idea of property, the courts talked about the right of property including the owner's exercise of exclusive dominion over the use, enjoyment, and disposal of property. The U.S. Supreme Court said the right to enjoy private property without undue influence or molestation was a right that was protected. Additionally, the Missouri Supreme Court expressly noted that the right of property includes ownership, possession, the right to use and enjoyment for lawful purposes. Your Honors, this is the fundamental right that we are bringing before the court. What's that? The right to use and enjoy property for lawful purposes. Now, that's been somewhat constrained for as long as in this case raise this to a constitutional violation. So, Your Honor, the ordinance that we're dealing with here is not a zoning ordinance. Zoning ordinances restrict uses of property to areas of a city or a jurisdiction where they're thought to be proper because if they're allowed in other parts of the city, then there will be some negative impact on the city's development. We know this isn't a zoning ordinance, but the right that you just articulated would be impacted by zoning ordinances, wouldn't it? It would, and Your Honor, that's... So, wouldn't that mean that zoning ordinances would be reviewed for strict scrutiny? Absolutely not, Your Honor. Why not? So, in the careful description of the right that the U.S. Supreme Court required us to include in our brief, we specified that the right we're asserting only applies if the property use itself is lawful. If a zoning ordinance makes a use of property unlawful, the right we're asserting would not apply. Now, I think that it is arguable... Well, why isn't that circular? I mean, if there were an ordinance that says you have to have turf grass, then the use would not be lawful. That's actually the question, Your Honor. So, the plans... It's unlawful unless the law is unconstitutional, but that's the same as with a zoning ordinance. Allow me to try and explain. Please. All of the flowers and plants that Ms. Duffner has in her yard are perfectly lawful. Not a one of them is unlawful or banned or a nuisance. They're perfectly lawful. What's unlawful is her choice to grow those flowers instead of to grow a government-mandated plant that makes her sick. That's what's unlawful, is the refusal to be a marionette for the city. So, for example, you know, again... I'm just not tracking why that's different from a zoning ordinance, because a zoning ordinance, you could lawfully build a house in an area that's restricted to other kinds of uses, and there's nothing unlawful about the house. It's just that the law says you can't build it in this location. The difference is compulsion, Your Honor. A zoning ordinance restricts how a property may be used because the restricted use is thought to be somehow detrimental to the city. It does not compel a property owner to do something with their property that they otherwise would not want to do. It simply restricts them from doing something. Building ordinances, maintenance, you know, the door, fire codes have to be exits, you're compelled to have certain ramps for the ADA, and so forth. Okay. Would that be compulsion? It would be compulsion. However, our assertion, and we spell this out in our brief, is that those are requirements that are directly, unambiguously related to public health and safety. You know, making sure that you've got fire... You mean there's a compelling interest, you mean? Yes, Your Honor. So you say that would satisfy strict scrutiny? Yes. You're going to ask us to apply strict scrutiny to every land-use regulation that's ever been adopted unless it's a zoning ordinance? That is absolutely incorrect, Your Honor. Well, tell me why I'm wrong, because what I hear you saying is that if you have a safety regulation, it's got to be subjected to strict scrutiny? Oh, so you're saying, so if someone wanted to bring a challenge... We're not requiring the courts to do anything. Well, if someone asserts it's a fundamental right, you're asserting that strict scrutiny applies? Yes. Okay, so if we assume hypothetically that a citizen says, I don't want fire extinguishers in my house, or I don't want fire detectors, smoke detectors in my house, I'm gonna challenge the city's authority to force me to have these, the court would then apply strict scrutiny, and they would say this is clearly related to the public health and safety, it's directly related, and there's no other way to ensure the safety of a home from fire, which is clearly a public problem, unless this requirement is complied with. So it would survive strict scrutiny. Absolutely. Has any other court ever adopted such a view? When it comes to other fundamental rights, yes. This is a case of first impression, Your Honor. We're very open about that. It's a case of first impression, but the question for this court is whether the right that we've asserted is deeply embedded in the American tradition. I've got that, but what I'm saying is this, if every single land-use ordinance is going to fall into this, right, and so if we have a lot set back, if we have, you know, a certain number of shrubs or trees that are required, they're all going to be If there's a compulsion element, yes. If there's not a compulsion element, then no. What kind of ordinance doesn't have compulsion elements to it? Well, if it's a restriction on what you can do with your property, that's restrictive. It is not compulsory. What's compulsory, you did say if you've got a requirement that you have to plant a certain number of shrubs, that would be compulsory, and that would be subject to strict scrutiny. The government would be required to say, why do you actually need this? There are a number of ordinances like that. In many cities, if you want to build a parking lot, you can't just pave an empty lot and paint a few stripes on it. There are also requirements about lighting, requirements about shrubbery being placed there that are, in essence, compulsions that are I don't have in my mind an image of the ordinance that you're thinking of, but I do think that if we're talking about compelling property owners to do something that they otherwise would choose not to do with their property, I think that the solution here is, from what I understand of your hypothetical, the city would not be saying, we're going to require you to create a parking lot and to put up all of these lights. If you're going to have a parking lot, it's going to have these features. Right, but you have the choice. Do you want to build a parking lot or not? Okay, so if you can choose not to build the parking lot, then I would say this right that we're talking about does not come into play. What's the right? Can you articulate again the fundamental right, the right to use property? How did you phrase it? The right to use your own property for a lawful, harmless use of your own choosing. Why wouldn't that apply to the parking lot example? Because I'm assuming under the ordinance that we're talking about, you would be prohibited from building a parking lot unless you comply with the additional regulations. Ms. Duffner does not have the choice not to comply. She's required, just by virtue of owning residential property in St. Peter's, she has an choose not to comply unless she's willing to suffer the penalties. And as of today, the maximum penalties she is facing are $377,000 in civil fines and more than 40 years in prison. Now did the, if I recall right, the facts there was some offer of some accommodation to only 5%? Is that, how did that play into this? It doesn't play into it at all. That's not the variance she asked for. She didn't accept the variance. She's still bound by the city's ordinance. And the fact that there's never been a variance granted for this particular requirement of lawns? They offered a variance. She chose not to accept it. Her choice not to accept it means the same penalties apply. She gets no leniency on the penalties because the city said, well if you put the grass exactly where we tell you to, we'll reduce the percentage of your lawn that you have to devote to this plant that makes you sick. But that's not the facts that we have. She's out of compliance. She's been out of compliance for four years and as a result, she's facing intense consequences which violates the Eighth Amendment. I'd like to reserve the rest of my time. I know you would, but I've got another question. Why doesn't the decision of the Missouri Appellate Court that you failed a state of claim under Section 1983 preclude this? Failure to state a claim, by definition, does not address the merits of the case. It was a question of the sufficiency of the pleading. What do you mean by definition it doesn't? A failure state of claim is typically, it does address the merits. It says you haven't pleaded an adequate claim. Your Honor, that's not the merits. The merits of the case are the substance of the argument. A motion to dismiss for failure to state a claim means there is a deficiency in your pleading that prevents the court from considering the substance of your argument. It can mean that what you've pleaded does not make out a violation of the statute and therefore you lose on the merits or doesn't make out a violation of the Constitution and therefore your claim has no merit. Respectfully, Your Honor, I believe that Missouri courts have said that failure to state a claim does not permit the court ruling on it to address the substance of the case, the merits of the case. It's merely... How do they decide whether, maybe it's different in Missouri than in federal court, but how does a Missouri court decide whether a plaintiff has stated a claim? Does it not compare the allegations to the elements of the cause of action and decide whether it meets them? The way the Court of Appeals decided that particular issue is they said that looking to an Eighth Circuit case that I actually don't think was applicable, they said you have to plead that there was... I'm sorry, I'm drawing a blank on the precise language. Basically that it was wildly inappropriate. I can't remember the specific language, but essentially you had to make a plea that it was totally irrational. I think that's the phrasing. And because our pleading did not include that phraseology, they said dismiss without prejudice. We still had the option to amend the pleading to include an allegation that the ordinance was totally irrational and we did that. We came back and the petition or rather the complaint that we filed in this court or in the Eastern District included those allegations and a few more to bolster the case. But because the Missouri Court of Appeals never addressed the substance of her constitutional claims, there had never been a ruling on the merits and we spelled that out in our reply brief and the district court correctly analyzed this under Missouri law. I hope I still have time to preserve. May it please the court, Matt Farrellis on behalf of the City of St. Peter's. Your Honor, pick it up on your comment about a failure to state a claim. I'd like to address that res judicata argument, then talk about due process, then talk about our two assertions in the brief with respect to the Eighth Amendment claim, rightness primarily, and then of course the substantive analysis. But as to res judicata, you're right and in Missouri they draw a distinction actually. The appellate courts draw a distinction between a defect in the pleadings, failure to state a claim dismissal, and a dismissal of the action, failure to state a claim dismissal. And you know my way of looking at this is to say that a plaintiff in the first instance has an obligation to bring all the facts that bear on their injury into the petition, and assuming all those facts are there, then if a court says you haven't got a claim because you don't meet the elements of this particular injury, that's dismissal for failure to state a claim based on the absence of an action or recognized claim. Our res judicata argument is very simple on the due process claim. It is not about the plaintiff's actions after remand, but rather that they had no claim after remand. So on the initial dismissal of the lawsuit, they had the opportunity then to ask leave to add more facts that they believe related to their injury. And they didn't. When it goes up to the Court of Appeals, it goes up as a final judgment. That's only what that's what courts of appeals review, only final judgments. And the Court of Appeals, they don't dismiss cases without prejudice. They affirm or reverse or remand with instructions. At the time that the Court of Appeals decision is opinion is issued, there is no substantive due process claim in the case. The actions on remand and what the district court seized upon and what I think is an incorrect, the incorrect thing to seize upon, the district court said on remand the claims without prejudice, somehow preserving a claim in the future. That is this claim, the substantive due process claim. There was nothing to preserve as to a substantive due process claim. There was no substantive due process claim in the case when it came back down on remand. So for that reason, we think trying to replead the same action that had been dismissed by the trial court and that dismissal affirmed on the Court of Appeals of Missouri, they have a final judgment on the merits, same parties, same claims and same facts raised to the court applies to bar the substantive due process claim before this court or in federal court. So the Court of Appeals affirmed on a different ground, is that what happened? That is right, Your Honor, yes. And they can do that. The Court of Appeals disagreed with the trial court on whether it was a claim to be repeated, but then said the complaint failed to state a claim and therefore count one is... The Court of Appeals, the trial court in the state dismissed it for lack of jurisdiction. You did not exhaust your administrative remedies, right? And then it went up on that. And the Court of Appeals says, look, we're entitled to, you know, it's a motion to dismiss. We look at everything. So if it can be affirmed on some other grounds, well, we're going to look at that. And that's what they did. They affirmed on the grounds that plaintiffs had failed to allege facts supporting the due process claim. Do you have any other questions on that point? So then as to the substantive due process claim, we're talking about a land-use regulation that has, since courts have looked at land-use regulations or use regulations within suburbia and cities, they have always, they have never identified a fundamental property right, a fundamental property or liberty interest. And they have always applied a rational basis standard. The district court got all of that exactly right, including its brief review of the history in our, this nation, with respect to land-use regulations. We expanded on that. I think even the appellant's stuffer's brief says essentially the same thing we've said and what the district court said and what the courts have said, that private, you know, private property within a city is subject to reasonable use regulations. All of the Blackstone commentary and the legal scholars and the Supreme Court have been consistent on that. The first case, or one of the earliest cases, is Village of Euclid versus Ambler Realty, and that's in 1926. I referenced briefly, not for the purposes of saying slaughterhouse cases apply or have any principle apply, but even in that decision, which was just, you know, years after the 14th Amendment was adopted, they said use restrictions are perfectly valid and do not impact any fundamental liberty or property interests. Counsel, even looking at this on a rational basis, doesn't this kind of push the limits of rational government regulation and having such a stringent requirement for lawns that someone who can create a beautiful artistic lawn without using something that is physically offensive to them and physically potentially harmful to them, why is that not something that a rational government would say, we don't have to have it exactly this way? I have three points to make in response. First, we have a framework. I mean, if you talk to folks and they say, hey, you know, there's a requirement that you have a certain amount of your lawn in grass and that seems silly or something, right? Well, we have a framework that the Supreme Court has set down and this circuit has adopted to analyze whether it's quote-unquote rational or silly or whatever, and the District Court did that work. So you identify a legitimate, there is one element, and then you must figure out whether or not the use regulation bears a relationship to that interest. And remember, the burden is upon the plaintiff in that scenario to say, under no conceivable hypothetical can this, under the facial challenge, does this regulation relate to that legitimate interest? So the court found a legitimate interest. Aesthetics is, as a state of Missouri, recognized as a legitimate state interest. Communities wanting a certain look or a streetscape. And then the question is whether or not this regulation, minimum 50% in turf grass, bears a relationship to that interest. And the District Court probably found it does. Well, if you can vary all the way down from 50% to 5, that doesn't, it sounds like it wouldn't be that big of a deal to just go on and say for someone with a health issue, 0% grass. Right. But they're not challenging the variance. So the procedure in Missouri is that a variance is an exception to the underlying ordinance. They're challenging the ordinance and the 50% requirement. So the variance is where the Board of Adjustment, a body of folks in the community, make a decision about, can we make an exception to this person? And they must prove a hardship not brought on by themselves. So what did the Board of Variance say about why they would go to 5% but not 0? Interestingly, the ordinance, the turf grass ordinance, the 50% requirement, was adopted in 2010. And what the Board said was, well, back in 2009, what was the state of your yard? Where was the grass and what did it look like? And there was evidence by the city, not by the Duffners necessarily, but by the city that, okay, back in 2009, about 5% of the yard had turf grass on it and it was located along a side fence. So the Board of Adjustment, in making their exception available to the Duffners, said, all right, well, let's act as if, you know, you had a non-conforming use, 5% of your yard was in turf grass. So a new law comes in. Your grandfather will create something. Exactly right, Your Honor. And that was for the decision of the Board of Adjustment. Right. But again, plaintiffs aren't challenging that. They're challenging the 50% requirement of the ordinance. So that's what we look to, at least before this court. And so the first question we'd ask is, what's the legitimate state interest? What's the governmental interest? That's correct. And the district court properly found it's And what's the rational relationship? And the court said that the requirement of a certain landscape or streetscape, longs, in suburbia, and this is suburbia, is promoted by this ordinance, which requires a minimum use of your yard as turf grass. And it also allows flexibility, and this was in the record before the Board of Adjustment, to allow plantings and gardens and trees and mulch, et cetera. And so the district court went through the proper analysis. So the other part of your question, Judge, was, well, what about this injury to Ms. Stuckner, that she's allergic, right? Well, the Supreme Court and the courts that look at these issues have said, well, we don't look at that. That's not what we're looking at. What we're looking at is whether or not it bears a reasonable relationship to the legitimate state interest. I'm not meaning to downplay her allergic reaction, but we all recognize, I think at bottom on land use regulations, if you want to live in the United States tree city, which is the city of St. Peter's, it is the tree city of the United States for several years. If you want to live in that community, you understand that you're going to be subject to certain types of regulations. If you want to live in a different community, you understand you're going to be subject to different types of regulations. We all accept our subservience to the land use regulations that are appropriately adopted and promote a purpose when we purchase our homes and when we do work in our homes and make beds and so on and so forth. So I'm not saying that she doesn't have, we don't, I don't mean to downplay her injury, but I mean that it's not relevant to the point of the due process analysis that the court undertook. You just wonder if the city was willing to grandfather them and go down to 5%, why would they rather have a big federal lawsuit over their turf ordinance than just let her go down to zero if she's allergic to the grass? I mean, I know it's not a legal question, but it's just a matter of common sense. You represent the city. Right. They don't want a federal lawsuit. Why wouldn't they just let her go down to zero and avoid the whole thing? We the rational thinkers or the reasonable thinkers don't have any control over the Board of Adjustment. It's made, it's composed of citizens and they make their decision. And we lawyers can't tell them you really don't want a federal lawsuit. I mean, we can tell them that. By the way, Judge, there were three property owners of the same neighborhood who spoke out in opposition to any exception. So sometimes the city is faced with a politics, you know, that are different. There are folks who are not in favor of this exception. There are other people who wanted uniformity in the neighborhood. Correct. So the city stands up for its law and for that part of its constituency that says we should not be allowing this type of work in our yards at all. Counsel, would you address whether the city intends to enforce all of the potential fines back to the time of non-compliance? That segues right into the due process or the Eighth Amendment. It's not right, Your Honor. There hasn't been any charge. They haven't gone to any trial. There hasn't been shown to be a violation, not at the penalty phase at all. So there isn't. And I would cite this court to U.S. v. Wilson. It's its own decision. So you're saying if the city did impose those fines that they would still have a claim for an Eighth Amendment violation? We're gonna have to wait and see. But I don't think that they do because it's not right. But they would be able to proceed on a claim. Once charged, they would. You're right. Yeah. Okay. Now, as to the substance, I'm sorry, Your Honor. No, you answer my question. As to the substance of it, you know, we have the one case that has actually decided there is an excessive fine. And that's the U.S. versus, and I won't pronounce it right, B-A-J-A-K-A-J-I-N. And that was a forfeiture case. That's the only case that has said an excessive fine exists. And the standard that this court uses and the Supreme Court uses is, okay, well, we have two considerations, I think, as this court has put it. One is, what does the legislature say? In this case, the Missouri legislature says the range of fines is $10 to $2.50 a day, 10 days in prison. That's the range. And we give substantial deference to the legislative body because they are the ones that are looking at violations and how they should be punished. The city has, the city's fine and penalty in this case is exactly within that range. And then we compare the gravity of the offense to the potential penalty imposed. And in this case, we're looking for gross proportionality. It is grossly out of whack with proportion. And in this case, we've got an ordinance, a land use regulation, which is important to the city with respect to its streetscapes and to its communities. And it's an aesthetic concern. And the fine is minimal. The courts have said, and I cited these in my briefing, courts have said these types of fines are minimal, $2.50, $10 a day. In fact, we cited the Seventh Circuit decision about grass ordinances, the height of grass, and what is the minimal fine on that. I see my time is out. Unless there are further questions, we would request that this court affirm the judgment of the district court. Granted summary judgment in favor of the city of St. Petersburg. Thank you. Mr. Ferrellis. Mr. Rowland? We'll give you a minute in rebuttal since we've used your time, but we'll give you your response. I have a few points, Your Honors. The binding precedent, if we're not going to find a fundamental right, is Nectow versus City of Cambridge. 1928 U.S. Supreme Court case striking down a zoning ordinance because it was not substantially related to the accomplishment of a legitimate government interest. That's binding on this court. The proportionality assessment was not applied in the district court. This court must remand so that they can apply the proper proportionality assessment under Bajikagian, which by the way, the penalty in Bajikagian was less than the maximum potential penalty that Ms. Duffner is facing right now. And additionally, the ordinance does not advance an interest in aesthetics because Ms. Duffner could have complied with this by planting the required grass in her backyard where no one would see it. Every resident in the city could plant the required grass in the backyard and it would not accomplish the government's purposes. Additionally, the city acknowledges no limit on its authority to compel its citizens to use their property the way the city wants, not the way that they want. This court cannot let that stand. That's my time, Your Honors. Thank you, Mr. Rowland. The court thanks both counsel for the argument you've made in resolving the issues in this case. We'll take the case under advisement, render decision in due course. Thank you.